Good morning. I'm Thomas Griffin. I represent Petitioner Nelida Quebeda. As I stated or as we stated in our letter brief to the court, I think there's plenty of authority for the court at this point to recognize that the board has abandoned the Rodriguez-Rodriguez standard, but even if it hasn't, because the decision was made in this case by a, it was non-presidential, and they didn't do a full categorical analysis in terms of what sexual abuse of a minor means, that the court is free to craft its own. How do we do that when we have a strepo on the books? We have our own precedent. So if you're taking issue with an en banc decision of the VIA, we've already held that that has deference. Is your argument that Esquivel-Quintana, because of the mode of analysis, indicates we should no longer view the statute as ambiguous and therefore not give deference? Or is it that if we got past step one of Chevron, that the VIA's interpretation is unreasonable? I think, just to step back, I think in this particular case, under the Chenery Doctrine, regardless of the strength of Restrepo or Rodriguez-Rodriguez before it, the Board of Immigration Appeals decision in my particular case said it doesn't apply, that Rodriguez-Rodriguez doesn't apply. So I guess by implication, they're not looking at the Restrepo type, you know, they're not using that same generic that they had designed, and they're using Esquivel-Quintana. So I would respond, then, to the argument that's made by the government that sending it back would be purposeless because it's not going to change what happened. Because in fact, the VIA came out against you, the rationale that it's not going to change what happened, and in fact, it results in no meaningful advancing of the process. Because the board, according to the government, this panel had no power to do what it did. It didn't, in fact, legally and properly reject Rodriguez-Rodriguez. It couldn't have done that. Sending it back doesn't change the result, and it doesn't meaningfully move the law forward because they couldn't do properly what they did. I take that to be their argument. What's your response to that when you say, Chenery, it's got to go back? Well, I just think this court's small, particular job in Ms. Gaveda's case is to make a ruling on whether or not what the board of immigration appeals said and how it decided was correct. Right, and they say it wasn't correct, but it was harmless. In other words, it was error, but it was harmless error for the court to say that Esquivel-Quintana controls. So point out the error, but don't send it back because it's purposeless. That's what I'm trying to get your response to. Yeah, I do think the Esquivel-Quintana case started at the board of immigration appeals before it jumped up to the Ninth Circuit and then to the Supreme Court. And even in Esquivel-Quintana underneath, they were not dealing with Rodriguez-Rodriguez. Then the Ninth Circuit basically overlooked it. They're saying it's not our guidepost. And certainly the Supreme Court said that, too, when they were saying, this is how you decide what sexual abuse for minors. Here's the methodology. And then you had the government itself picking its own definition, another child abuse definition, and it didn't cite Rodriguez-Rodriguez. But if you even think at oral argument, the government in Esquivel-Quintana before the Supreme Court also rejected Rodriguez-Rodriguez by moving on to the proper methodology that the board never used to start in Rodriguez-Rodriguez. Here's the problem with that line of argument that at least that the attorney general points out and I'm trying to get you to engage with, right? You know from their briefing that the position they're taking is Esquivel-Quintana doesn't change Rodriguez-Rodriguez, didn't purport to change the BIA's reliance on the Section 3509A8. And that all it did was focus on one narrow question, and that is age of consent. And on that point, and that point alone is that precedent controlling. And by its terms, the opinion doesn't seek to undo reliance on 3509A8. So how could it be that it represents a whole sea change and a throwing out of 3509A8 and the Rodriguez-Rodriguez decision when by its terms it says we're not doing that, we're just focused on this one thing. What's your answer? I think the BIA's position has been, and I think it's dangerous and it's wrong, is that it's a moving target. And they're saying we use Rodriguez-Rodriguez when it worked because Rodriguez-Rodriguez was about a guy who flashed someone in decent exposure and they needed to get that guy deported because that's how they think at the board. So they kept opening it and opening it, skipping over the criminal statutes, which the Supreme Court says you use the criminal statutes, you follow the regular rules of statutory construction. And Rodriguez-Rodriguez is just, I think, disingenuous the way they said this guy had no confidence. And I do think that they're making repairs. They're saying that the Supreme Court has given us guidance and given us a methodology for properly determining what the guideposts should be. I thought you'd even agree that Escobar-Quintana does not replace 3509A8 with anything. Well, Justice Thomas had set out, I think, one of the questions, what is sexual abuse of minor? And then he spends probably about six paragraphs trying to describe what it is. And then he sort of just abandoned it, never finished with a perfect definition besides Miriam Webster's definition. Well, he doesn't try to describe – look, here's the challenge here, right? In the first instance, we want to know from you what the import of Escobar-Quintana is. That's the first thing. Then we can talk about the BIA and Rodriguez-Rodriguez and Restrepo, right? But please, in the first instance, Judge Jordan has told you what he believes the government has argued with regard to the import of Escobar-Quintana. Tell us why that's wrong. Because when you look at the opinion, it's hard to come away from a close reading of the opinion and think that Justice Thomas has done anything more than focused in on the age of the victim. And in fact, there are two places in the opinion, which I'm confident you're keenly aware of, that the justice says we are not coming up with a new definition. And in fact, it's an interesting case because there's a survey of all these states and a chart, you know, and usually we don't have charts in the Supreme Court. So it's clear that there's no definitive – clear to me. I want to know whether it's clear to you that there's no definitive statement on sexual abuse of minors. So help us. What's the import? The importance of it is that finally, the highest court in the country said, here's what you use. Here's how you figure out the generic. But since that's not the case at bar, we're not going to define it today because we don't need to. But follow these rules and set forth the rules. And I think that's the import of it. And I think when you put it, contrast it to the Rodriguez board decision, which was a 9 to 8 decision with very strong dissents, they didn't follow that methodology. And I think the Supreme Court is sort of, you know, a little bit rapprochement to them. They're saying, you know, let's draw the line here. There has to be a guidepost. And when you guys do it, follow these rules. And I think if this court follows the rules, it would never come up with 3509A8 as the definition. Is that because we would not be getting past Chevron step one? In other words, first, we have to see if the statute clearly addresses the issue on its face. Right. And one of the things that Escobol-Quintana seems to do is to take a much more vigorous approach to examining context. Other states, other state statutes and dictionaries beyond Black's Law Dictionary to reach the conclusion that the statute itself, when it comes to the question of what does it mean to be a minor, that that term is actually clear on its face. It's a plain language conclusion reached in a different way than perhaps we have traditionally thought about step one of the analysis, the Chevron analysis. I mean, I'm not smart enough to know whether step one is really hit in this case. I mean, it's 1101A43A is murder, rape, and sexual abuse of a minor. In my personal mind, we all know what rape is. We all know what murder is. And I think I know what sexual abuse of a minor is. But in terms of how the courts have repeatedly said, we don't know. And they didn't define it and they didn't point us to a particular statute. That's a fine position. And then now Escobol-Quintana is coming in and saying, here's how you do it. Well, assume that that's assume that's right, that in fact, we get past Chevron step one, which is what I hear you saying. We would we would we would get to Chevron step one and say ambiguity. If that's true, you know, Restrepo says what it says. We've got a binding decision from an en banc court that says we're we're going to we're going to accept Rodriguez, Rodriguez. We're going to defer to that. I shouldn't say by en banc. We have a binding precedent from a panel of this court that says we're going to accept Rodriguez, Rodriguez, which was en banc, even if there were dissents. And we're going to embrace that. How how do we overcome that if if all that Escobol-Quintana said was, hey, when we're looking at age of consent, that's clear. We don't need to go to Chevron deference. In terms of me saying there were strong dissents, I didn't mean on the Restrepo case, I was referring to the Rodriguez, Rodriguez, just to show the feeble legs that that was on. So I'm sorry about that. I don't think that Restrepo stood for the fact that there is a solid guidepost for sexual abuse of a minor that must be thirty five or nine. I think they deferred because there was a reasonable decision underneath. But that was the decision by the court that it was reasonable. I don't think it was reasonable that Rodriguez, Rodriguez, who had no contact with his with his victim, that basically was a flasher, should be deported like a murderer and a rapist with no chance of sure. But let me let me try to put a finer point on it because I'm we're not getting to where I'm hoping to get, which is to answer this. No, that is my ineptitude question. I'm sure we've. What can you tell us about Esquivel Quintana that would say to us this sufficiently undermines the rationale of Restrepo that you are no longer bound by it? We're a panel of the court. We've got a binding precedent on the book. What is it about Quintana Esquivel that would allow us to say, hey, forget that panel decision in Restrepo. Rodriguez, Rodriguez doesn't apply. Is it enough to say, well, they talked about a different methodology? I think they set out the recipe for determining what a generic is. And when you look back at Rodriguez, Rodriguez and Restrepo, it wasn't followed. And I think that's the strength of the argument. And I don't think that when a appellate court defers under Chevron deference for a guidepost generic means it's a precedent decision. In terms of that, you'll be locked in forever with that. Does the fact that the age of consent may be perfectly clear mean that everything about sexual abuse of a minor is perfectly clear? In other words, the court in Esquivel Quintana was able to say we don't have to worry about Chevron because age of consent, that is clear. We don't have to worry about that. We can talk a lot about, we can survey, et cetera, et cetera. But respective ages, there's nothing mysterious about that. Does that mean that everything about the question of sexual abuse of a minor as defined in the INA is clear and unambiguous and therefore not subject to Chevron? No, I don't think that. And I also don't think they said that the age was obvious, rock solid throughout the country, that they determined it by using that methodology that they set forth to find sexual abuse of the minor. And when they did it, they did the 50-state survey. They saw there were some states with 18 and some states with maybe 17 and then 16 as the age. And what goes to sort of against what we see in Rodriguez-Rodriguez and in Restrepo is they did the most restrictive one, the one that protects the immigrant the most. Maybe some deference to Feng Hao Tan case from the Supreme Court that says doubt should be in favor of and ambiguities in favor of the immigrant. But they could have said the age of consent is 18 because some of the states included. So we'd scoop up all of them. But instead they restricted down to 16. And what you see is the opposite. How does that inform us on sexual abuse of a minor such that we say to ourselves that we must overturn our precedent? Usually when the Supreme Court makes an enunciation that leads a circuit or all of the circuits to reexamine either their holding or the manner in which they came to their holding, it's clear. When you look at Esquivel's Quintana, the manner in which the justice speaks to statutory interpretation, there's nothing unique about it. There's, you know, we look to the dictionary, we look to plain meaning. This this age issue is equivocal. So we'll look outside of those two manners or method of making a determination. And he goes through that process. What does that inform us about having to overturn? You want us to overturn our precedent, right? And when that happens, when we're compelled to do that, right, it's usually quite clear from the the language and import of the opinion. I don't speak for my colleagues. I don't see it. So I want you to help me get there. Yes. Well, I'm I'm sort of taking the position that the precedent decision that Restrepo was in Catapan that followed was to is not saying that this court from here on out will use as a solid rock guidepost. It's it's a precedent in that it defers to that outcome in that case. Counselor, it seems like you can get us there two different ways. Right. What one is the step one way where Esquivel Quintana, the Supreme Court, is looking at all sorts of cannons of construction, going to look at a 50 state survey, making a determination on on language in the statute that does not say 16. It doesn't say 18. But they conclude that the term is unambiguous. So they never get to deference. Right. They conclude we don't need to consider Chevron deference because the language of the statute unambiguously forecloses the board's interpretation. So that's one argument. I think you're trying to make that we never even get there because Esquivel Quintana tells us about a methodology that we should follow to determine whether the face of the statute is is unambiguous. And Esquivel Quintana also seems to do something a little different than Restrepo and Rodriguez Rodriguez in that instead of looking at the whole term writ large, it focuses in on one particular aspect of it to make an assessment, whether that's unambiguous or ambiguous so that you have to move to the next step. For us, you know, it seems that where there is going to be over breath, if there is in the state offense, we're talking about the the issue of the penetration with a foreign object where there is not a purpose set forth in the statute, where there's not a mens rea in the statute. We could take either of those and and focus in on on on that. So addressing that and that either of those issues. What is your best argument that the we can do the kind of analysis they did in Esquivel Quintana and conclude that the federal generic as to those issues is unambiguous? If I don't think the federal generic is unambiguous, that doesn't seem to be the question. I think it's determining what the federal generic is and make sure it's unambiguous. Once we once the appellate court or the BIA makes a president decision that says this is what our guidepost is, that should be unambiguous because the federal deportation statute. And that's the problem that leads us to the categorical analysis is is Congress in writing that immigration laws was pretty ambiguous on some of these things. So we need to be able to look at the statute and say we can tell from this statute unambiguously without having to even get to step two of Chevron that the federal generic does have a purpose requirement or or has a mens rea requirement that's greater than recklessness. Your Honor, are you saying that the federal when you're saying federal generic, are you saying thirty five oh nine eight? Are you saying the term sexual abuse of minor in the immigration statute? Sexual abuse of the minor in the immigration statute is focused on and trying to ascertain what the federal generic would what the matches in terms of the offensive conviction that would fit within that category. I think it's repeatedly said in the decisions before this that there's a definition in the federal law for what sexual abuse is. And that's at 2243. And then there's definitions at 2246 that help guide it along. So you've got a criminal statute in the same code that says exactly what sexual abuse of minors. And what started this ball rolling, this snowball was that Rodriguez, Rodriguez was confronted with a guy who flashed someone and that's not sexual abuse of a minor under 2243. Right. You can't you can't get us like that. It's not speaking for myself. It's not helpful to say in the legal analysis to say, hey, don't trust those BIA guys. They're so result oriented, which is the argument you keep going back to. Just leave that to the side because it's not advancing the discussion for me at least. For what we've got to deal with is I think we got to it a minute ago. You really want us to adopt the not thirty five or nine eight. But what is it? Twenty two. Forty something. That's the that's that's the place you want us to go. And of course, that's not where we ended up in Restrepo. But so assume for the sake of discussion that we thought we were bound by Restrepo and the thirty five or nine eight was the federal generic we had to deal with. That is the federal generic. That is our our base. You've made an you've made arguments that that they're still over breadth in the Pennsylvania statute. Right. And and I want you to answer the question. Well, two questions. First, why doesn't the word molest. Right. Molestation in thirty five or nine eight eight cover everything that the Pennsylvania statute thirty one oh one and in turn thirty one. Twenty three a seven cover. Why? Why doesn't the concept of molestation just. Do enough to cover that ground that the Pennsylvania statutes cover. That's to me a very ambiguous term, and I'm not sure everyone can interpret what molest means. I think it just means to bother. And it means it means to do something. Yeah, it's very broad. Yeah, indeed. Exactly my point. So why isn't it broad enough to cover any range of things of the sort you covered in your briefing, whether it's ritual, whether it's curiosity, whether it's bizarre things with animals, which you and the government ended up going off to the zoo on no matter what it is. Why is that? Why doesn't molestation cover that waterfront? Well, molestation is just if it just means bother, then everyone's going to get deported. I mean, I don't know. But if you are getting a piercing or you're having something stuck in one of your orifices, it doesn't necessarily mean that the recipient of it, I guess, is being bothered. You may be he or she may be in on it. And that's that's molestation. And molestation doesn't mean consent or non-consent. You can you can. I mean, we're we're dealing with a minor. So technically consent is is impossible. Right. We're not dealing with consent or being in on it. Dealing with penetration, however slight. And you had come up with some ideas about why. Well, that could be stuff that is not covered because Pennsylvania speaks so broadly. And the question I'm putting to you is, how do you get any broader than molestation? It's about as broad as you can get. And why doesn't that cover everything? Well, that's because I think you've gotten to the essential problem is that you had and you had an indecent exposure case. That the BIA couldn't find a way, a rational way, I think, to call that sexual abuse. So they find thirty five or nine eight and then it scoops it up. Rodriguez, Rodriguez, I'm trying to get you. I'm trying to get you past that. You've made your argument on that and you've made it effectively and we understand it. Now I'm asking you a different question, which is take it as given that we are dealing with thirty five or nine eight. We're not going back to question the good faith of the BIA and how it got there. And we're and we're accepting for just the sake of discussion that Restrepo controls. And that's our foundation. That's our federal generic. So we have that's our federal generic and we have to do a categorical approach. How do you distinguish the word molestation in a way that doesn't cover everything under 3101? So, OK, a defendant, an offender penetrates someone in the genitals or anus in a very slight way. You get arrested and for individual voluntary sexual involuntary sexual intercourse. Was that a molestation? No, I mean, ordinary parlance wouldn't. You walked out on the street and said you're going to penetrate somebody's genital or anus. Is that a molestation? Do you think they'd say yes? If it wasn't if you were getting pierced, if you were getting tattooed, if you got to take consent out of it. Right. We're dealing. We have to take as a given that consent is not in this because we're dealing with a minor. Right. Well, consent can't be a piece of it. If molestation just means bothering someone without consent, then I guess so. But I don't think people should be reported and banished for bothering people. Don't you have to argue to us that there is a difference in the purpose that's read into the federal statute or the mens rea in the federal statute? Well, with Judge Jordan saying if we're holding on to thirty five or nine, eight, there is no purpose. So I don't know what I'm comparing it to. And what I what we're asking you to do is you need it. It's your position that if a if a babysitter puts a suppository in an infant that that that constitutes molestation for purposes of federal statute. There's no purpose required. It certainly violates the Pennsylvania statute. Right. It's a penetration, however, slight of someone that doesn't have consent. That's for sure. Is it sexual abuse of a minor? No. Well, here's what I know. Is it molestation? That's Judge Jordan's question. And I don't know if that baby was molested. So what's the what? What mandates us to go to twenty to forty six rather than thirty five or nine? If you follow the methodology, the logical methodology that set it set forth by Esquivel, Quintana, the Supreme Court, you have to go to the closest federal statute. So the first stop to look is the two other terms at eleven oh one forty three a murder and rape. This is the most egregious crimes you commit. So you're going to have to have an egregious or a very high mens rea. That's part one. There's no mens rea in thirty five or nine. The next thing is to look at the criminals that sent sent Quintana spends all this time on the least culpable conduct, which is part of the standard analysis. Why? Why are we doing that there? That they're saying there that what's the least culpable conduct someone in the state could do. Right. And then compare that against the federal generic. So we're just still coming back to what the federal generic is. And so, you know, you look at your your the coach, the other terms in eleven oh one and you get murder and rape. And Esquivel, Quintana says high mens rea. Those are the worst things you could do. The next thing is to look at analogous federal criminal statutes. That's twenty to forty three. And the definitions I read at the very first level, Rodriguez, Rodriguez had someone. There was no contact at all. There was a distance, there was a flashing, nothing more. So they wouldn't use twenty to forty three because the sub definition of sexual contact required sexual contact. So if there was no contact, how are we going to get this guy at the restructural level? There was contact, but it was through clothes. So and that's another. And at twenty to forty three, it doesn't. For the definition of sexual contact, it doesn't include through clothes. So the definition kept getting bigger rather than as Esquivel, Quintana says smaller. Get it down to 16 years old, even though some states have 18. Some states have. Step back and help us understand what or help me understand where you're focusing your argument. Is it that if we do that analysis ourselves, we conclude that the requirement of a purpose in the federal generic is unambiguous? And so that's why Restrepo and Rodriguez are out. Or are you saying ambiguous? OK, but then you turn to look at the deference that we paid in Restrepo and we only we only defer to a reasonable interpretation. And your argument is that it's no longer reasonable under the analysis of Esquivel Quintana. Which of those seem like different arguments to me because they're different stages of the analysis. So which are you arguing? Well, I think in Restrepo, you know, this court said it's reasonable. We get what when you set forth all these all this language about Congress wanted more people to get deported for more things. And and then and then the BIA settles on this very expansive thing that has the word molestation in it. You know. All right. If that's your reasoning, then this is reasonable. But I think the fundamental parts will have to be correct. Here's the question I think is being put to you. There's a there's a Chevron step one argument that you could make. And there's a Chevron step two argument that you can make. And the question being put to you is, which are you making? Are you making the step one argument, which is, hey, you don't. After Esquivel Quintana, they tell you that if you look at if you approach this in a certain way, it's not ambiguous. So you don't have to worry about Rodriguez, Rodriguez and Restrepo. Done. That's your step one route. Your step two route is no, still ambiguous. But we have a we don't have to defer any more when we get to questioning what this means, because the question now becomes following Esquivel Quintana. What's the right way to assess ambiguity or or whether what the BIA did was reasonable? That's what I take Judge Krauss to be putting to you. Are you making a step one argument or are you making a step two argument? Or are you making both? You know, so that's put to you. And maybe with that one, we'll we'll have exhausted you and everybody else and we'll move on. But can you answer that question? Sure. I think the first thing we look at is eleven oh one forty three eight one sexual abuse. Is that an ambiguous term? I will concede that it's an ambiguous term. Different people can interpret it different ways. So we move to step two. What are the tools, the traditional tools of statutory analysis, statutory interpretation? And and Justice Thomas set it out and hammered it home. And the very first thing he used was the Merriam-Webster dictionary, the popular ordinary people definition. And and and it's has sexual contact with someone who doesn't give consent. So that's sexual abuse. Bottom line is that you're not making a step one argument. You're making a step two argument and your step two argument is Rodriguez, Rodriguez. You don't have to defer to that anymore because Escobar Cantona tells you that that's not a reasonable interpretation. But Escobar Cantona will tell you how to get to a reasonable interpretation. Exactly. OK. Yeah. OK. Thank you very much, Mr. Griffin. We'll hear from the government. May it please this court. My name is Andrew Olivero on behalf of the respondent, the attorney general of the United States. The Supreme Court's decision in Escobar Cantona did not repudiate Rodriguez, Rodriguez or this court's decision in Restrepo. As well, the BIA did. Right. Or at least this panel of the board did. It's not clear what the board did. How can you say that? When they said in Hock Verba, we agree that Rodriguez, we agree that Escobar Cantona controls and that it was a mistake for the IJ to look to Rodriguez, Rodriguez. They they not quoting exactly. I could find the quotes for you, but that is what the board said here, didn't it? Yes. In a very. What's unclear about that? Well, there was wrong, but what's unclear about it? Well, they didn't explain why they were departing from their president and. OK, maybe wrong, but they were clear, weren't they? They were certainly wrong. And and honestly, your honor, I don't quite understand how they got where they got, because a reading of Escobar Cantona does not produce a new definition of sexual abuse of a minor. We accept for the sake of discussion that they clearly did reject Rodriguez, Rodriguez, and they clearly did say Escobar Cantona now controls. Does that have any legal import at all in how we should be approaching this case? No. As we say, both in our brief and in the letter memorandum, the board's decision here was unpublished. So therefore cannot reverse Rodriguez, Rodriguez. Furthermore, it lacked sufficient analysis to reverse Rodriguez, Rodriguez. And I mean, does that mean that we should just like end of subject, send the thing back without further discussion? Say, hey, you did this wrong and you can't do this. Now do it right. What what allows us or what would permit us or why should we get into an extended discussion of what the right thing to do is when the board didn't do the right thing? And everybody acknowledges everybody being. Everybody doesn't like something that the board did here. Right. They don't like the board's result. One way or the other. You don't like the board's approach. Why shouldn't we just send it back and say, hey, you got this wrong. You better do it right. Remand would be an option. And but we do note, though, that there is, you know, president of this court and others that say that, you know, the remand, it's not it's not a game of ping pong. We this court knows what the definition of sexual abuse of a minor based on its controlling precedent. The board, in this case, did not follow its precedent. So remand would be for the purpose of following its precedent, which would be reaching the exact same result that it reached before. And we'd end up here again. Yes. What if we concluded that Rodriguez, Rodriguez no longer reflected a reasonable interpretation of sexual abuse of a minor? Well, with that respect, I would say that the Second Circuit in Acevedo, which we cited in the letter brief, which came down after briefing, addresses that very question and says that Rodriguez, Rodriguez remains. An appropriate interpretation of a ambiguous term. Well, each each each circuit is going to address this issue as it comes up. Right. Correct. So we've got a couple that have said doesn't change a whole lot, although Acevedo did seem to move on when it came to the mens rea question and said, we're not going to give for deference to thirty five or nine here or the board's interpretation. We're going to conclude that there is nothing in thirty five or nine on mens rea. And so we got to figure that out. That is correct. That is what they did, Your Honor. So should we take that approach here and look at mens rea to say we've got a clear cut disparity here. The government concedes that recklessness applies in the state. And if we're going to look at every indication of what minimum mens rea is required for a federal generic offense of sexual abuse of a minor, it seems to be at least knowing. Right. Well, as the Second Circuit said with that specific statute, that there was no way of committing the offense, which is very similar to the statute of question here. But there was no way you could do it. At a minimum, it had to be knowing. So is that is that appropriate to do if you're if you're looking at whether there is, in fact, elements that match? And once we conclude that the elements simply don't match, that there's a different mens rea that's required. Is it really appropriate to say, well, we're going to go ahead and try to interpret that. The statute here to to then use legal imagination and see if there is circumstance any as any circumstance that would allow us to differentiate. Well, with respect to the judicial imagination, that's the point is that you're not you have to look at the realistic probability. And that's what the Second Circuit did. But why do we do that if we conclude that there is not even a match between the elements? Well, but the point of thirty five or nine is that it is an inclusive definition. And so that it's not. It covers the broad range of conduct. And the mens rea admittedly is not addressed in thirty five nine eight. But the Pennsylvania statute does have the three intentionally, knowingly or reckless. So at a minimum, it's reckless. Petitioner has not presented any arguments why recklessness would not cover. And but if this court disagrees, then Acevedo provides an alternative analysis. So do we then need to look at the way the Pennsylvania statute is written and the exceptions that it provides to to ascertain whether one could recklessly violate that statute? Yes, you would refer to the statute. I'm puzzled when you say Acevedo provides an alternative. Maybe I misunderstand Acevedo, but it seems like you just backed into a corner because Acevedo goes out. The second circuit goes out of its way to make this mens rea point and then says, hey, it's got to be pretty serious stuff because it's in there next to murder and rape, murder, rape, sexual abuse of a minor. And therefore, we have to keep that in mind when deciding what the mens rea is. If you're saying to yourself, boy, this has to be really bad, really egregious, serious, serious stuff. How do you how do you get to reckless the least culpable mindset for criminal behavior? Well, I mean, you're the New York statute. It might have worked for the New York statute that they were looking at. But we're not looking at the New York statute. We're looking at the Pennsylvania statute where recklessness is the lowest mens rea. Correct. And what the Second Circuit said, though, was that looking at the New York statute, you the minimum mens rea that you could actually to do the conduct. It had to be at a minimum knowingly. And if you apply that analysis to the statute here again, it can only be again following the Second Circuit to be the same. It's knowing the same as reckless? No. OK. What the Second Circuit said is that there was no way of committing the New York statute recklessly. Right. Exactly my point. If the Pennsylvania statute says you can commit an offense here recklessly and as Acevedo was pegging it at knowing, isn't that a problem for the government? No, you are, because the Second Circuit didn't look at New York's culpability. They looked at the relied on Duenas to to look at whether you could commit realistically the conduct in the New York statute. They weren't looking at New York's culpability statute. They were looking at just the criminal statute. So in this case, it would be the twenty three, a seven. And said that realistically, you could only commit that crime knowingly or intentionally. So what is your what's your Acevedo argument here is your Acevedo argument here that there's no way to commit the the the Pennsylvania crime in any way that's other than knowingly or intentionally. Correct. That's a strange thing in light of the assertion that in this is in the statute that, hey, you can violate this recklessly unless what you're saying is, don't worry, they'll never prosecute for reckless behavior. That that is what it's an odd thing to say when the statute says you can be prosecuted for reckless behavior. But when it comes to the statute in question, the statutory rape of a minor. As the Second Circuit point out that you cannot commit that recklessly. Well, here's the I guess I guess I'm having a little bit of difficulty because I'm not sure how we got to statutory rape of a minor. I thought we were at a categorical comparison between thirty five oh nine eight and Pennsylvania consolidated statute section thirty one oh one. We were asking ourselves whether there was a categorical match, not whether what she actually did was a crime that you could commit only knowingly. But whether generically thirty five oh nine eight of Title 18. Excuse me. I think it's at 18. Yeah. U.S. code matches up with section thirty one oh one. Isn't that the question in front of us? The question is whether her conviction under a seven. Is a categorical match in thirty five oh nine eight. Thirty one. Twenty three. Yes. Twenty three. Yes. So which is. So we can look to what she did. It's not a categorical. No, it is categorical. But the issue is that the definition of deviant sexual intercourse is in. So you have to read that definition in conjunction with subsection a seven. She committed deviant sexual intercourse with a minor under the age of 16. Although the only thing that thirty one. Twenty three. A seven ads. Is the. Is the. The age of consent. Right. And that we're talking about deviant sexual intercourse. Yeah. Deviant sexual intercourse with a minor under the age of 16. Right. But thirty one oh one. Which defines deviant sexual intercourse. So the only thing that thirty one. Twenty three. A seven. Is the minor piece. Right. That you're a felony. If you do this with somebody under the age of 16. Am I wrong about that? That is correct. OK. And that has a men's way of recklessness. There's the general provision that. Yes. Then how do you like. Then how do you get to the knowing part. Maybe I'm just like. Maybe I'm not understanding you. But I understand you'd be saying. Acevedo tells you. That this can only be done knowingly. And that doesn't help us. If what we're looking at is a statute that says. In Pennsylvania. You can do that recklessly. And we will prosecute you for it. Because we put it right in our code. Well the. The issue. With Acevedo. And again. I would note that it came down. So we didn't have time to. Fully brief it. But the. The issue there wasn't whether. New York said you could. Commit the statute. Recklessly. It's whether. Whether they had a general. Provision like Pennsylvania. It's whether there was. Whether the conduct in question. So committing deviant sexual intercourse with them. Minor under the age of 16. Could you do that recklessly. Could it ever. Could it ever be done. No matter what the state says in their code. Could you ever. Engage. In penetration however slight. With a victim under the age of 16. Engaging in deviant sexual. Well. Could you ever do that recklessly. And. And you're saying. Acevedo tells you that could never happen recklessly. Under the realistic probability test. That is correct. We're dealing with fundamentally different statutes though. Right. I mean in New York. They were looking at. Being 18 years old or more. Engages in oral sexual conduct. Or anal sexual conduct. With another person less than 15 years old. With that not having a mens rea. The second circuit went and read one into it. Saying. Those two activities. Oral sexual conduct or anal sexual conduct. Could only be committed knowingly. We're dealing with a statute that is. Written very differently. Well. It includes penetration however slight. With a foreign object. And it's for any purpose. With some carve outs. And. Well. Again. I don't see how that can be done. Recklessly and even if you do. Go with the reckless. Mens rea. There's just. Even if you're recklessly inserting something into the genitals of a child. That falls within the definition. Of sexual abuse of a minor. There's no reason not to. At a minimum. Do reckless conduct. Well in your in the end. You're you're falling back on the assertion. I take it. That. There's no realistic possibility. That the state of Pennsylvania. Would ever prosecute somebody. Or deviate sexual intercourse with a minor. Unless there was knowing behavior. Is that it. Yes. And. Again. The. So it's just in our fully drafted statutory language. To say you could do it recklessly. Because the statute says you could do it recklessly. But you're saying. That'll never happen. That is. What we. That's what the Second Circuit concluded. Well they concluded about a New York statute. Not about this one. That's why. I don't want to keep going around in this circle. But you seem to be leaning heavily on Acevedo. To say you can get. Sort of it. Don't worry about that mens rea thing. And. Pointing us to Acevedo. But. Just the way you. Look at Cabeda. And tell us. Hey you did. You did this. With a much. Less significant crime in Cabeda. So don't worry about it here. It was a different statute. I mean. That's the problem I'm having. With the government's argument. It seems to. Sort of have a. Sort of. A kind of a seriousness. Aspect to it. As if we were looking at these crimes. And saying. Well that's really bad. And this is really bad. So. It must be covered. But the. Categorical approach. Doesn't ask us what's bad. And isn't bad. Categorical approach. Takes us into the bizarro world. And asks us. Is there a match. And that's all it asks. It doesn't. It doesn't make. Distinctions about badness. It just says. Is. On a Venn diagram. Is this circle. All the way within that circle. Or is this circle. Sort of. Somewhat in that. And somewhat outside it. Because if it's not all the way inside it. It's not categorically a match. Badness be. Darned. Doesn't matter. Right? Correct. And I'm not. I'm. I apologize if I. Led you off. But. The. The. 35098. And the Pennsylvania statute of questions. Are a categorical match. How so? Well. That's the question. Okay. That we put to Mr. Griffin. How do you get to the categorical match? All right. How's the overlap? How's it complete? And not to flog a dead horse. But using the realistic probability test. So. Doing it within the realm of conduct. The Pennsylvania actually would. Prosecute and not. Imagine scenarios involving. Police torture or. What not. Under the realistic probability test. What you have is. A statute where. A child is being. At a minimum. Penetrated in their sexual organs. That falls within. 35098. Definition of sexual abuse of a minor. At a minimum molestation. Or other forms of sexual exploitation. There is a. How about things like. Like. Genital piercing. Or. Or. The. Suppository example. I gave before. Well the suppository. I believe would fall under the. Medical or hygienic. Exception. The. Babysitter inserting. A suppository is a medical. Procedure. It would be giving. Medicine. Procedure. Yes. I mean. It's. Or it's a hygienic there. I mean there's a very limited. Exceptions. And the. Imagination required to. Go beyond 3508. Just is not realistic. But isn't that the problem. That they are limited exceptions. And by their terms. They seem pretty formal. It's not like Alaska statute. Is you know any. Any activity that would be associated. With a caregiver. A very broad exception. That would seem to take out. Most things you could think up. But if we have a carve out. For something as. Specific as medical. Or hygienic procedures. Or law enforcement. Procedures. Doesn't that leave a whole lot. Out there that could be done. Recklessly. Perhaps and but as we. Noted though that. There's there are no arguments. Presented why reckless behavior. Would not be covered. Because again. They don't really focused on. Using the federal generic. Includes recklessness. It covers. The Pennsylvania statute. It question here yes. You're you're you think that. Five oh nine. Has what. Or however we. Using that as a guide. Coming up with the mens rea. For the federal generic offense. Would be something less than. A knowing offense. Notwithstanding all of the other. Provisions that talk about. What sexual abuse. Or sexual abuse of a minor. In the U.S. Code. Well. But the the key important though. That you're not directly importing. Federal statutory law. It's you're doing a broad survey. Including the dictionary definition. How states do it. Which is what the board did in. Rodriguez Rodriguez. It didn't pick thirty five. Oh nine eight. Randomly. It considered twenty two forty two. Forty three and forty six. As the operative definition. And rejected them. Because they were too narrow. Where do you get reckless. And thirty five or nine. I mean there is. There is no mens rea. In thirty five oh nine eight. So if we need to think. We need to ascertain. What the federal generic mens rea is. How do we do that. Well at this time. The board has not provided an answer. The Second Circuit. Provided an answer. In Acevedo. We accept that. That it's got to be at least knowing. Like the Second Circuit. I mean they were able to conclude. That the state statute in question. Had knowing. But we have a different statute. Yes. So if we were to follow their approach. You would agree. That we have two different mens reas. In front of us. The federal one of knowing. And the state of reckless. And the Second Circuit though. Explained though. That the conduct in question. And the conduct here. Could not be done. At a minimum. We're back to your assertion that. It's an inartfully drafted statute. Even though it says it covers. Reckless behavior. It's impossible to actually imagine. That the state would prosecute. Reckless behavior. And therefore consistent. With what footnote three. And page 20 of your brief. It's unrealistic. Don't worry about it. That's what we're coming back to again. Right? We have no. We have not been able to find any examples. Of reckless conduct. So that's the assertion is. Inartfully drafted statute. They'd never prosecute it. I mean. Correct. If you don't go there. You've got no place to go. Do you? Correct. There's a recklessness in the statute. And there's a knowing. Provision. Which is the only thing. You've been able to point us to. And that's as a. Two different ones. And the only way you get to. Categorical matches to say. Don't worry about that. Recklessness stuff in the statute. They'd never do it. Pennsylvania would never do it. Am I right? That is correct. Okay. Good. Anything else? Okay. If there are no other further questions. We would ask that you. Affirm the result of the board. And in the alternative. Remand for further consideration. All right. Thank you. Thank you very much. Mr. Rivera. Mr. Griffin. Just quickly. I'm sorry. I think. I know there was some discussion. On realistic probability. I think the court. This court has abandoned realistic probability. And if it's in the statute. Impossible. The Pennsylvania legislature. Wrote it in. That's it. No matter how strange. Or bizarre. It could be. The latest case. I think was. Sal Moran. Which I cited. In my opening brief. Saying realistic. Probability test. Is not in play. There's a. I mean. We've got. Gwyneth Alvarez. Supreme Court precedent. Which tells us. That realistic. Probability. Is an issue. That you shouldn't. Just be. Imagining stuff. Happening. So. Why is it. Why isn't that. A live argument. For the government. To make. To say. You just. You know. They're not. They're not. Going to prosecute. Somebody. For. This kind of. Molestation. If what they're. Really saying. Is a person. Stumbled into him. In the hallway. And recklessly. Penetrated their. Genitalia. That's just never. Going to get prosecuted. Period. It's only. Going to get prosecuted. If you've got. Bad behavior. Knowing behavior. I understand that. I just think. That if it's. If it's possible. To have. Have it happen. In the statute. Any of the examples. I've given. In Judge Krause's. Suppository example. Are not. Bizarro. Examples. At all. The suppository example. You know. We go back and forth. On that. But the government's. At least got a response. To that. Which is. Inserting a. Inserting a. Suppository medicine. Into somebody's. Medical procedure. May not involve. Forceps. And a scalpel. But you're. Engaged in. Quote. Good faith. Medical work. One would say. Or if the babysitter. Was just doing it. Because they were. Wacko. And it got some. Sick pleasure out of it. Then you would no longer. Be in good faith. And you might be prosecuted. But the point of saying. Good faith medical. Is to say. You can put a thermometer. In a child's penis. Or you can put a suppository. In there. In good faith. And you're not going to be. Criminally liable. Because that's. A medical procedure. That everybody recognizes. You take care of. With an infant. So. They've got an answer. To that. What. What. What else. Do you have. Which would be. Sort of. Reckless. That you could imagine. Oh yeah. They go after you. For that. Well I mean. I think the examples. I've already set forth. Are there. I can definitely see. Parents coming home. Where there was. A suppository inserted. In their child. By the babysitter. And they're. After the babysitter. For some reason. And they will. Call them. And then you have to. Shake it up. Good faith. We'll have an argument. About good faith there. But not recklessness. The babysitter's not going to say. I had this suppository. In my hand. And the baby was right there. And I tripped. And. That's not going to happen. Right. It's going to be an argument. About whether that was. A good faith action. By the babysitter. Right. Yes. I understand. Yeah. I think. I think. Just another quick point. I think. Under. Brand X. Sort of the back and forth. Between the board. Is okay. You. This court. Is not. Locked into. 3509A. Because. Because. Because. The board. Used it once. And you. And this court. Agreed with it once. I think. The mens rea. Question. That Judge Krauss. Got into. There's two mens rea. And you. And. This panel. Hasn't talked about. The other one. But. The Judge Krauss. Talking about. Knowing and reckless. Knowing and reckless. But if you see this. That. Where I set forth. Six or seven. Of your sister courts. But the mens rea. That they talk about. Is for. Sexual or libidinal. Gratification. So that sort of. That ending. Prepositional phrase. Is what. Those courts say. Are the mens rea. They just don't get into. Knowing reckless. And negligent. So. And that's missing. From 3509A. So that's what takes. The sex part. Out of it. And if you look at part. The second. Sentence. In the Pennsylvania. Criminal statute. That Ms. Caveda. Pleaded guilty to. It's. There's nothing sexual. On that penetration. Sentence. So. And. And. All the sister courts. Here are the seven. Here that I cited. Also it has to be for. Libidinal. Or sexual. Gratification. Of a person. And then. Because I think. The board. Did such a bad job. And at the same time. Said repudiated. At least. This three member. Panel of the board. Rodriguez. Rodriguez. This court is free. To design. Its own. Definition. And I would recommend. 2243. And the problem. The respectful court. Had here was. That contact. Wasn't through. It didn't allow. For contact. With the clothing. But you can just go. To one. Subsection down. To 2246. Where it says. Sexual contact. Including direct. Or through the clothing. So an easy. And very precise. Sexual abuse. Definition can be found. In the federal statute. Thank you. Mr Griffin. Thank you. Mr. Olvera. We've got the case. Under advisement. I will. Recess. Court.